[No. 12018. *En Banc.* July 6, 1914.]

P. H. Johns, *Respondent*, v. J. L. Wadsworth, *as County Auditor, et al., Appellants.*[1]

Counties—Funds—Gifts—Aid to Agricultural Associations—Constitutional Law. Rem. & Bal. Code, § 3024 *et seq.*, providing that the county commissioners may make an appropriation to a county agricultural fair association to pay expenses and premiums awarded, violates Const., art. 8, § 7, prohibiting a county from giving any money or property or loaning its money or credit to or in aid of any individual, association or corporation except for the necessary support of the poor and infirm, etc.; and it is immaterial that § 3025 makes the county commissioners *ex officio* members of the fair association, and that § 3026 provides that all buildings and structures erected and the funds appropriated shall become the property of the county.

Appeal from a judgment of the superior court for Pierce county, Clifford, J., entered October 11, 1913, enjoining the issuance of a county warrant, at the suit of a taxpayer, upon sustaining a demurrer to the answer. Affirmed.

*Lorenzo Dow, W. W. Keyes*, and *Gordon & Easterday*, for appellants.

*T. L. Stiles*, for respondent.

*Post, Avery & Higgins, amici curiae.*

Gose, J.—This is an action by a resident and taxpayer of Pierce county to enjoin the issuance and payment of a county warrant. The facts are these: On the 18th day of July, 1913, the board of county commissioners of Pierce county, for the purpose of donating and giving to the Western Washington Fair Association the sum of $3,586.19, allowed a claim to the association for that amount, conformably to the provisions of the code (Rem. & Bal. Code, § 3024 *et seq.*; P. C. 111 § 1). The association is a private corporation, organized for the purpose of holding a county fair and giv-

[1]Reported in 141 Pac. 892.

ing an exhibition of stock, agricultural and dairy products, including articles manufactured in Pierce county. It conducts the only agricultural fair in the county. A demurrer was sustained to an answer setting forth these facts. The defendants having announced that they did not desire to plead further, judgment was entered in favor of the plaintiff. This appeal followed.

The code, Rem. & Bal. Code, § 3024 (P. C. 111 § 1), provides:

"Any agricultural fair association which has a corporate existence for the purpose and object of holding a fair and agricultural exhibition of stock, cereals and agricultural produce of all kinds, including dairy produce as well as arts and manufactures in any county, may apply to the board of county commissioners of such county for a grant to pay expenses and premiums awarded."

Section 3025 (P. C. 111 § 3) provides that the members of the board of county commissioners shall be *ex officio* members of the county agricultural fair association, in all counties where appropriations are made under the provisions of the act. Section 3026 (P. C. 111 § 5) provides, that no more than one county agricultural fair shall be held in any county in any one year; that any association applying for the benefit of the appropriation must have a corporate existence, and that all buildings and structures erected with the funds appropriated shall become the property of the county making the appropriation. Of the applicable provisions of our constitution, art. 1, § 29, reads: "The provisions of this constitution are mandatory, unless by express words they are declared to be otherwise." Const., art. 8, § 6, prohibits counties from incurring indebtedness for any other than "strictly" county purposes. Const., art. 8, § 7, provides:

"No county, city, town, or other municipal corporation shall hereafter give any money or property, or loan its money or credit, to or in aid of any individual, association, company, or corporation, except for the necessary support

of the poor and infirm, or become directly or indirectly the owner of any stock in or bonds of any association, company, or corporation."

The appellants, contending for a liberal construction of the constitution so as to effectuate the intention of those who framed it and the people who adopted it, say: "It must be conceded that the main and chief purpose of an appropriation made conformably to the statutes in question is to promote a public purpose." Counsel who have filed a brief as *amici curiae* argue that the purpose of the constitution is to prohibit the county from aiding in any manner a purely private enterprise, and that a constitutional provision should be interpreted so as to further the known purposes for which it was adopted.

The section of the constitution last quoted, in most express terms, prohibits a county from giving any money, property or credit to, or in aid of, any corporation, except for the necessary support of the poor and infirm. If the framers of the constitution had intended only to prohibit counties from giving money or loaning credit for other than corporate or public purposes, they would doubtless have said so in direct words. That agricultural fairs serve a good purpose is not questioned, but the constitution makes no distinction between purposes, but directly and unequivocally prohibits all gifts of money, property, or credit to, or in aid of, any corporation, subject to the exception noted. In *Rauch v. Chapman,* 16 Wash. 568, 48 Pac. 253, 58 Am. St. 52, 36 L. R. A. 407, after referring to § 7, art. 8, of the constitution, this court said that a recurrence to the history of the times will show that many municipalities had become bankrupt because of liabilities incurred in aid of railroads, "and various other public improvements which were deemed advantageous" at the time. In *Rands v. Clarke County,* 79 Wash. 152, 139 Pac. 1090, we said that the word "corporation," in the article under review, did not include the Federal or state governments, or any of their members. In

*Wilkesbarre City Hospital v. County of Luzerne,* 84 Pa.
St. 55, it was held that an appropriation from county funds
to a corporation organized to conduct a charitable hospital
was in conflict with the constitution of the state, which was
similar to ours. The act there reviewed limited the appropri-
ation to the support of such poor patients under treatment
in the hospital as were unable to pay for their treatment. In
that case, the court said:

"A law enabling a private incorporated hospital to make
requisitions upon a county, for the payment of its charges
for the support of patients under treatment, even though
they be paupers, is an appropriation of money by the county
to the corporation and comes within the prohibition of the
constitution."

Here the appropriation is to a private corporation organ-
ized for a worthy purpose, educational in its nature. There
is no room, however, for construction. Unless plain, simple,
direct words have lost their meaning, the legislature was with-
out power to authorize the gift. The act authorizes a
"grant" to pay "expenses and premiums." The amendment
of 1909, which provides that the members of the board of
county commissioners shall be *ex officio* members of the asso-
ciation, adds nothing to the validity of the act. The same
may be said of the amendment which provides that the build-
ings erected with the money appropriated shall become the
property of the county making the appropriation. How
money given to pay "expenses and premiums" shall be trans-
muted into buildings we are not advised. Counsel for the
respondent very pertinently observes:

"Whitworth college is almost on the point of being re-
moved from Tacoma to Spokane, because it needs money. The
college is a great public benefit to Tacoma, probably as much
as the fair is to the county. What is to hinder the legisla-
ture from authorizing the city to supply the lacking funds,
giving them subject to the condition that the mayor shall be
*ex officio* a member of the college board of trustees, and that

the college treasurer shall report annually how the money was spent? Many people think that one of the greatest institutions a city can have is a theater and auditorium; why not contribute ten or fifty thousand dollars to the construction of one, put a councilman or two on the board, and have a yearly account filed?"

Such illustrations might be multiplied, and who shall say that such associations are not worthy, or that they would not conduce to the public good?

The appellants, among other cases, have cited *Taylor v. Thompson*, 42 Ill. 9; *Speer v. School Directors etc. of Blairsville*, 50 Pa. St. 150; *Broadhead v. Milwaukee*, 19 Wis. 658, and *Daggett v. Colgan*, 92 Cal. 53, 28 Pac. 51, 27 Am. St. 95, 14 L. R. A. 474. In the *Taylor* case, it was held that a tax imposed for the purpose of procuring funds to secure volunteers to the United States army when civil war was raging was a tax for "corporate purposes." The *Speer* and *Broadhead* cases are to the same effect. In *Daggett v. Colgan*, it was held that an act which appropriated money to be used in the construction of buildings and maintaining an exhibit of the products of the state at the World's Fair, to be held at Chicago, was not in conflict with the constitution of the state. In principle it does not differ from the rule announced in *Rands v. Clarke County*.

Counsel who appear as *amici curiae* have cited numerous authorities and made an extended argument which takes a wide range. We have examined the cases cited and can say confidently that none of them are in point. Many of them are based upon constitutional provisions essentially different from ours. Others merely decide which of two agricultural societies is entitled to a small appropriation made by the county or the state, there being no constitutional question raised. *Poweshiek County Cent. Agricultural Soc. v. Shaffer*, 86 Iowa 377, 53 N. W. 304, illustrates the last class of cases. In that case, two county agricultural societies claimed the right to receive aid from the state. The court held that both

were entitled to receive the aid. In *State v. Robinson*, 35 Neb. 401, 53 N. W. 213, 17 L. R. A. 383, it was held that, as a general rule, the legislature is invested with authority to determine what purposes are matters of public concern so as to render taxation permissible. In the absence of constitutional restriction, this is undoubtedly true. It would also be true if the only limitation in the constitution was that the appropriation should conduce to the public welfare.

The judgment is affirmed.

CROW, C. J., MOUNT, MORRIS, MAIN, and CHADWICK, JJ., concur.


ELLIS, J. (concurring)—It is with extreme reluctance that I have given my assent to the foregoing opinion. The grant in question is of obvious public benefit. The terms of the quoted provision of the constitution are, however, so clear and explicit as to leave no room for construction. We can do no more than acquiesce in what the constitution has already plainly declared. To do otherwise would be an act of judicial lawlessness. I am, therefore, constrained to concur.