[No. 37193.   En Banc.   March 4, 1965.]

THE STATE OF WASHINGTON, *on the Relation of John J. O'Connell, as Attorney General, Appellant,* v. THE PORT OF SEATTLE *et al., Respondents,* WASHINGTON PUBLIC PORTS ASSOCIATION *et al., Intervenors.**

*The Attorney General, Robert F. Hauth* and *Philip H. Austin, Assistants,* for appellant.

*Bogle, Bogle & Gates, Ronald E. McKinstry,* and *Richard L. Young,* for respondents.

*Reported in 399 P. (2d) 623.

*Binns & Petrich, John H. Binns,* and *James J. Mason,* for intervenor Washington Public Ports Association.

*Houghton, Cluck, Coughlin & Schubat* and *Paul Coughlin,* for intervenor Washington Public Utility Districts Association, Inc.

ROSELLINI, C.J.—Pursuant to the authority vested in him under RCW 43.09.260, directing the attorney general to act upon the findings of the state auditor in his reports of examination of the operations of municipal corporations in this state, John J. O'Connell brought this action on behalf of the state, asking for a declaratory judgment and injunctive relief, and challenging the legality of certain expenditures by the respondent Port of Seattle for what its officers call "promotional hosting." It is the state's position that these expenditures of public funds for the entertainment or "hosting" of shippers, influential businessmen, and other private individuals are prohibited by Article 8, § 7, of the state constitution, which provides:

"No county, city, town or other municipal corporation shall hereafter give any money, or property, or loan its money, or credit to or in aid of any individual, association, company or corporation, except for the necessary support of the poor and infirm, or become directly or indirectly the owner of any stock in or bonds of any association, company or corporation."

The Washington Public Utility Districts Association, Inc., and the Washington Public Ports Association were allowed to intervene as parties interested in the issue involved.

The trial court granted the defendants' motion for summary judgment, holding that the expenditures in question are not gifts within the meaning of the constitutional provision. The assignments of error challenge the correctness of this determination.

There are no contested factual issues in the case. The respondents and intervenors effectively admit that the officers and employees of the Port of Seattle treat shippers and other private individuals to free meals and refreshments at the expense of the Port of Seattle, and that they

are reimbursed for their own meals and other expenses of this kind incurred both within and outside the city of Seattle.

The respondents and intervenors base their defenses upon affidavits to the effect that the expenditures are made in connection with promotional efforts; that they are useful for that purpose; that competitors engage in such practices, and it is necessary for the Port of Seattle and other port districts to engage in them; and that the Port of Seattle and other port districts would lose business if they could not entertain at public expense.

The appellant has not attempted to dispute the truth of facts or the validity of opinions expressed in these affidavits. The issue raised by the appellant goes only to its materiality and relevancy.

The appellant draws our attention to the fact that implicit in the trial court's findings, conclusions, and judgment is its theory that because the expenditures serve a public purpose and aid the port district in performing one of its statutory duties, they are not gifts of public funds. It is the appellant's contention that this theory is invalid.

■ The Port of Seattle is one of a number of port districts in this state. The legislature has created port districts expressly as "municipal corporations," thereby classifying them in the same fashion as cities and towns, public utility districts, and similar public agencies. RCW 53.04.060. See also Art. 11, § 10, Washington constitution.

■ The basic purpose of a port district is "the acquirement, construction, maintenance, operation, development and regulation of a system of harbor improvements and rail and water transfer and terminal facilities" (RCW 53-.04.010), and it is given incidental powers for that purpose. *State ex rel Huggins v. Bridges*, 97 Wash. 553, 166 Pac. 780; *State ex rel. Hill v. Bridges*, 87 Wash. 260, 151 Pac. 490. One such incidental power is found in RCW 53.08.160, authorizing the "promotion, advertising, improvement and development" of such facilities.

Some of the functions of the port district are proprietary in nature, but the respondents do not suggest that the

revenues from its operations or the funds which it expends for promotional hosting are not public money or property. It is the respondents' theory, however, that since the main purpose of such hosting is the promotion of business for the port, the fact that private individuals may incidentally benefit from such expenditures does not make them gifts of public money or property; and this theory was adopted by the trial court.

The appellant contends, on the other hand, that the purpose for which the expenditures are made does not change their nature as gifts. It points out that there is no contention and no evidence that the private individuals receive their meals or drinks pursuant to any contract with the Port of Seattle or that the individuals who are served at these functions incur any corresponding legal obligation of any kind. In other words, it says the purchase of meals and refreshments for those individuals is without valid legal consideration. A gift is defined in Black's Law Dictionary (4th ed.) as follows:

"A voluntary transfer of personal property without consideration. Gordon v. Barr, Cal. App. 82 P. 2d 955, 956, 957. A parting by owner with property without pecuniary consideration. Hays' Adm'rs v. Patrick, 266 Ky. 713, 99 S. W. 2d 805, 809. A voluntary conveyance of land, or transfer of goods, from one person to another, made gratuitously, and not upon any consideration of blood or money. 2 Bl. Comm. 440; 2 Steph. Comm. 102; 2 Kent, Comm. 437. Ingram v. Colgan, 106 Cal. 113, 38 P. 315, 28 L. R. A. 187, 46 Am. St. Rep. 221; Gray v. Barton, 55 N. Y. 72, 14 Am. Rep. 181; Hynes v. White, 47 Cal. App. 549, 190 P. 836, 838; in re Van Alstyne, 207 N. Y. 298, 100 N. E. 802, 804." (p. 817)

■ Since the expenditure of port funds for promotional hosting is without consideration, the meals, drinks, etc., are given to prospective customers. The fact that they are given for a legitimate purpose does not change their nature as gifts. The constitutional provision specifies the purposes for which public money or property may be given away— the necessary support of the poor and infirm. *Expressio unius est exclusio alterius.*

This court has rejected the theory that the character of a gratuitous expenditure is altered by the purpose it is intended to serve. *Johns v. Wadsworth*, 80 Wash. 352, 141 Pac. 892. That was an action brought by a taxpayer to restrain the auditor of Pierce County from issuing a warrant to the Western Washington Fair Association (a private corporation) to pay its expenses. A statute (Rem. & Bal. Code § 3024) authorized the county to make such a payment. The trial court held the act unconstitutional, and the auditor appealed, contending that:

" . . . 'It must be conceded that the main and chief purpose of an appropriation made conformably to the statutes in question is to promote a public purpose.' . . ."

This court answered that contention as follows:

"The section of the constitution last quoted [Art. 8, § 7, *supra*], in most express terms, prohibits a county from giving any money, property or credit to, or in aid of, any corporation, except for the necessary support of the poor and infirm. If the framers of the constitution had intended only to prohibit counties from giving money or loaning credit for other than corporate or public purposes, they would doubtless have said so in direct words. That agricultural fairs serve a good purpose is not questioned, but the constitution makes no distinction between purposes, but directly and unequivocally prohibits all gifts of money, property, or credit to, or in aid of, any corporation, subject to the exception noted. . . ."

This court said further:

"Here the appropriation is to a private corporation organized for a worthy purpose, educational in its nature. There is no room, however, for construction. Unless plain, simple, direct words have lost their meaning, the legislature was without power to authorize the gift. . . ."

In another analogous and more recent case, *Washington State Highway Comm. v. Pacific N. W. Bell Tel. Co.*, 59 Wn. (2d) 216, 367 P. (2d) 605, we declared unconstitutional a statute which required the state highway commission to pay the costs of relocating or removing private facilities in certain cases, holding that it violated Article

8, § 5, of the state constitution, prohibiting the giving or loaning of the state's credit to any individual, association, company, or corporation. In so doing, we held that the fact that the payments would serve a public purpose would not alter their status as prohibited gifts.

This court has upheld statutes granting pensions to public employees. Such statutes serve a public purpose, but we said in *Bakenhus v. Seattle*, 48 Wn. (2d) 695, 296 P. (2d) 536:

"In this state, a pension granted to a public employee is not a gratuity but is deferred compensation for services rendered. The contractual nature of the obligation to pay a pension when the employee has fulfilled all of the prescribed conditions was recognized in *Luellen v. Aberdeen*, 20 Wn. (2d) 594, 148 P. (2d) 849 (1944), in *Benedict v. Board of Police Pension Fund Com'rs*, 35 Wn. (2d) 465, 214 P. (2d) 171, 27 A. L. R. (2d) 992 (1950), and in *Ayers v. Tacoma*, 6 Wn. (2d) 545, 108 P. (2d) 348 (1940). *Had we held in those cases, or were we to hold now, that the pension statutes provide for the payment of gratuities, we would be bound to hold further that such statutes are contrary to the provisions of Art. II, § 25, and Art. VIII, § 7, of the Washington constitution and are therefore void.*" (Italics ours.)

The trial court was much impressed by the argument pressed by the respondents and the intervenors, that the denial of the right to engage in promotional hosting would result in the loss of business for the port. However, such a consideration does not justify the courts in disregarding the plain and unambiguous provisions of the constitution. If Article 8, § 7, is too restrictive in its terms, that is a matter for the citizens of this state to correct through the amendatory process. It is not for this court to engraft an exception where none is expressed in the constitutional provision, no matter how desirable or expedient such an exception might seem.

The judgment is reversed and the cause remanded with directions to grant the relief prayed for by the appellant.

HILL, DONWORTH, WEAVER, OTT, HAMILTON, and HALE, JJ., concur.

FINLEY, J. (dissenting)—The business promotional activities of the Port of Seattle, questioned in this proceeding, do not differ substantially from those commonly indulged in, and apparently appropriately, by other private and public sectors of the business community of this and other states. The majority opinion reads:

". . . It is the respondents' theory, however, that since the main purpose of such hosting is the promotion of business for the port, the fact that private individuals may incidentally benefit from such expenditures does not make them gifts of public money or property; and this theory was adopted by the trial court."

I agree with respondents' theory, as stated by the majority, and the approval and acceptance by the trial court of this theory, view or resolution and disposition of the problem involved. In support of this I shall only add that the promotional activities of the Port of Seattle questioned herein, contrary to the implications of the majority opinion, are not clearly specifically and unequivocally covered or prohibited by the language of Article 8, § 7, of the Constitution of the State of Washington. Interpretation or construction of the language of Article 8, § 7, in a realistic or ultimate sense, is required in order to reach either the result approved and adopted by (a) the majority of this appellate court, or (b) the trial judge in the trial court. The facts or conclusions, the reasons or reasoning, advanced in respondents' brief and apparently approved and accepted by the trial judge seem to me substantially more convincing and preferable than those approved and adopted in the majority's disposition of this appeal. Consequently, I dissent.

HUNTER, J., concurs with FINLEY, J.

April 21, 1965. Petition for rehearing denied.